ANDREW, J. T. C.
This is an appeal from a determination of the Director of the Division of Taxation that plaintiffs are liable for taxes imposed on gains realized on the sale of property located outside the State of New Jersey for the tax year 1975.
Plaintiffs William and Norma Hough became New Jersey domiciliaries in 1970 and remained domiciled in the State through 1975, the tax year in question. In 1975 they sold two parcels of real estate located outside New Jersey. The sale of one parcel located in Virginia, which had been purchased in 1958, resulted in long-term capital gain to plaintiffs of $15,-326.03. The sale of a parcel located in New York State, acquired in 1974, resulted in long-term capital gain of $2,734.46. *70 These gains were reported on plaintiffs’ 1975 federal income tax return and on their 1975 New Jersey unearned income tax return. Plaintiffs specifically excluded the gains, however, from the computation of total unearned income on their New Jersey return.[1]
The Director of the Division of Taxation determined that the gains realized by plaintiffs as a result of the sales of the out-of-state realty were includible in their unearned income for purposes of the Tax on Capital Gains and Other Unearned Income Act, N.J.S.A. 54:8B-1 et seq. (Unearned Income Act, or Act).[2] A deficiency was assessed in the amount of $1,352.21 plus interest. Plaintiffs appealed that deficiency to the Division of Tax Appeals and the appeal was transferred to this court pursuant to N.J.S.A. 2A:3A-26. The matter has been submitted on plaintiffs’ motion and defendant’s cross-motion for summary judgment.
Plaintiffs advance four arguments in support of their challenge to the Director’s determination: first, taxation of gains realized by New Jersey domiciliaries from the sale of out-of-state realty constituted a deprivation of property, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution; second, the State of New Jersey cannot, consistent with due process, tax gains attributable to appreciation in value that occurred prior to plaintiffs becoming New Jersey domiciliaries; third, the State cannot, consistent *71 with due process, tax gains attributable to appreciation in value that occurred prior to the effective date of the Unearned Income Act, and fourth, application of the Unearned Income Act to plaintiffs is arbitrary and capricious and constitutes a denial of due process pursuant to the Fourteenth Amendment.[3]
The legislative power of taxation is not wholly without constitutional limitations. The Due Process Clause of the Fourteenth Amendment to the Federal Constitution provides one measure of protection against the abusive exaction of state taxes. Morton Salt Co. v. South Hutchinson, 159 F.2d 897, 901 (10 Cir. 1947). The states do, however, have great latitude in the enactment of revenue laws, and such laws are not lightly overturned. The Supreme Court of the United States has consistently reaffirmed this principle in considering the numerous attacks upon state tax statutes that the court has entertained. Thus, in affirming a judgment upholding the right of a municipality to tax certain real property, the court stated:
[I]n order to bring taxation imposed by a state or under its authority within the scope of the Fourteenth Amendment of the National Constitution, the case should be so clearly and palpably an illegal encroachment upon private rights as to leave no doubt that such taxation by its necessary operation is really spoliation under the guise of exerting the power to tax. . . All doubt as to the validity of legislative enactments must be resolved, if possible, in favor of the binding force of such enactments. [Henderson Bridge Co. v. City of Henderson, 173 U.S. 592, 614-15,19 S.Ct. 553, 561-62, 43 L.Ed. 823 (1899).]
Also, in affirming the dismissal of a suit to enjoin the enforcement of a state excise tax statute, the court said:
Except in rare and special instances, the due process of law clause contained in the Fifth Amendment is not a limitation upon the taxing power conferred upon Congress by the Constitution. And no reason exists for applying a different rule against a state in the case of the Fourteenth Amendment. That clause is applicable to a taxing statute. . . only if the act be so arbitrary as to compel the conclusion that it does not involve an exertion of the taxing power, but constitutes, in substance and effect, the direct exertion of a different and forbidden power, as, for example, the confiscation of property. [A. Magnano *72 Co. v. Hamilton, 292 U.S. 40, 44, 54 S.Ct. 599, 601, 78 L.Ed. 1109 (1934); citations omitted].
The controlling question, with respect to the constitutionality of a tax is whether the taxing authority has given anything for which it can ask a return. Wisconsin v. J. C. Penny Co., 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267 (1940). Due process requires some minimum link between the state and the person, property or transaction which it seeks to tax. Miller Bros. Co. v. Maryland, 347 U.S. 340, 344-45, 74 S.Ct. 535, 538-39, 98 L.Ed. 744 (1954). Thus, with regard to ad valorem taxation of real property, for example, taxation of property not located in the taxing state is constitutionally invalid, whereas the state in which property is located may tax it regardless of the citizenship of the owner. Id. at 345, 74 S.Ct. at 539. This is because the owner of real property, whether or not a resident of the state in which his land is situated, receives the benefit and protection of the laws of that state which enable him to enjoy the fruits of his ownership. See Curry v. McCanless, 307 U.S. 357, 364, 59 S.Ct. 900, 904, 83 L.Ed. 1339 (1939).
Domicile alone, however, affords an adequate basis for the taxation of income. As explained by the Supreme Court:
That the receipt of income by a resident of the territory of a taxing sovereignty is a taxable event is universally recognized. Domicil itself affords a basis for such taxation. Enjoyment of the privileges of residence in the state and the attendant right to invoke the protection of its laws are inseparable from responsibility for sharing the costs of government. [New York ex rel. Cohn v. Graves, 300 U.S. 308, 312-313, 57 S.Ct. 466, 467, 81 L.Ed. 666 (1937).]
This power to tax the income of domiciliaries extends to income received from sources outside of the taxing state. The precise issue raised by plaintiffs’ first argument was faced and resolved by the Supreme Court in New York ex rel. Cohn v. Graves, supra. The appellant in that case, a resident of New York State, owned income-producing property located in New Jersey. She sought a refund of New York State income taxes that were attributable to the rents she received from the New Jersey *73 land.[4] She contended that the tax was, in substance and effect, a tax on real estate located without the state, in violation of the Fourteenth Amendment of the United States Constitution. The court considered the distinction between a tax on income and a tax on property and concluded that,
Neither analysis of the two types of taxes, nor consideration of the bases upon which the power to impose them rests, supports the contention that a tax on income is a tax on the land which produces it . .. Income is taxed but once; the same property may be taxed recurrently. The tax on each is predicated upon different governmental benefits; the protection offered to the property in one state does not extend to the receipt and enjoyment of income from it in another.
It would be pressing the protection which the due process clause throws around the taxpayer too far to say that because a state is prohibited from taxing land which it neither protects nor controls, it is likewise prohibited from taxing the receipt and command of income from the land by its resident who is subject to its control and enjoys the benefits of its laws ... These considerations lead to the conclusion that income derived from real estate may be taxed to the recipient at the place of his domicile, irrespective of the location of the land.... [Id. at 314-315, 57 S.Ct. at 468.]
See, also, Lawrence v. Mississippi State Tax Comm’n, 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102 (1932); Greenough v. Tax Assessors of Newport, 331 U.S. 486, 491, 67 S.Ct. 1400, 1402, 91 L.Ed. 1621 (1947).
The income that was held to be within the reach of New York State’s tax law in New York ex rel. Cohn v. Graves, differs from that at issue herein. Graves involved rental income, which is dependent at least in part upon management and other activities of the owner, and for which there is a realization in every taxable period in which the property is held for that purpose. In contrast, the income at issue here, resulting from appreciation in value, is entirely “passive.” It is caused by economic and other forces beyond the control of the owner of the property. Gain is realized once, and only once, upon the disposition of the land. However, these differences do not compel a contrary result in this case. The crucial fact, present *74 in both situations, is that the tax is imposed upon income. Neither of the methods by which the gain is ultimately realized support a conclusion that the tax is assessed on the land itself. Thus, in both situations, the state of domicile at the moment of realization may properly tax the gain.
The principle of New York ex rel. Cohn v. Graves was applied to a situation similar to that in the present matter in Ingraham v. State Tax Comm’n, 368 Mass. 242, 331 N.E.2d 795 (Sup.Jud. Ct.1975). In that case a Massachusetts resident was taxed on income received from the sale of timber and gravel located on land in the state of Maine. Upholding the application of the tax to the transactions, the Supreme Judicial Court of Massachusetts affirmed the principle that, “a state is not prevented by the Federal Constitution from taxing a resident’s income derived from property outside the State.” Id. at 248, 331 N.E.2d at 798.
Plaintiffs seek to distinguish New York ex rel. Cohn v. Graves, relying on Senior v. Braden, 295 U.S. 422, 55 S.Ct. 800, 79 L.Ed. 1520 (1935); Frick v. Pennsylvania, 268 U.S. 473, 45 S.Ct. 603, 69 L.Ed. 1058 (1925), and a number of other decisions of the Supreme Court. The cases referred to by plaintiffs, however, concern the taxation of property, not the taxation of income derived from the sale of property. Senior v. Braden was also relied upon by the appellant in Graves, and it was quickly disposed of by the Supreme Court:
... no question of the taxation of income was involved. . . . Here the subject of the tax is the receipt of income by a resident of the taxing state, and is within its taxing power, even though derived from property beyond its reach. [New York ex rel. Cohn v. Graves, supra, 300 U.S. at 316, 57 S.Ct. at 469.]
Plaintiffs have failed to distinguish the present situation from that in Graves, and they have not attempted to show that the Unearned Income Act contemplated a less comprehensive tax base than that involved in any of the statutes at issue in the cases considered. I find that the Supreme Court’s decision in Graves is controlling, and plaintiffs’ contention that the State of New Jersey cannot constitutionally impose a tax upon the gains here involved is without merit.
*75 Plaintiffs next submit that the statute may not be applied to any gain reflecting appreciation in value of the realty occurring prior to the time plaintiffs became domiciled in New Jersey. Plaintiffs’ contentions that they received no benefits from New Jersey prior to establishing domicile, and that the appreciation became part of the land so that New Jersey cannot reach it, misperceive the nature of the unearned income tax as it applies herein. As noted above, it is a tax on income resulting from the sale of land and not a tax on the land itself. Realization of the gain is the event which calls the taxing act into operation, not the increase in value that occurred in prior years. See MacLaughlin v. Alliance Ins. Co., 286 U.S. 244, 52 S.Ct. 538, 76 L.Ed. 1083 (1932); Eisner v. Macomber, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1919). Plaintiffs note that many of the eases relied upon by the Director involved the taxation of gain resulting from the sale or exchange of intangibles, such as corporate stock. Plaintiffs concede that the state of domicile may tax such gain, but they assert that the law is different as far as realty or tangible personal property is concerned. However, they have not provided any authority to support a different result for the taxation of income realized from the disposition of realty. The fact that property may not be taxed by a state other than the one in which it is located cannot support the conclusion that a state cannot tax the income realized by its domiciliaries from the disposition of property located out-of-state. When plaintiffs realized these gains they were entitled to and did receive all the benefits attendant to residency in New Jersey. Since gain derived from the sale of a capital asset is income when realized, and since domicile is a sufficient basis for the taxation of income, I find that the taxation of gain realized subsequent to becoming a New Jersey domiciliary, though accrued prior to said domicile, does not contravene the due process clause of the Fourteenth Amendment. Accord, Evans v. Comptroller of the Treasury, 273 Md. 172, 328 A.2d 272 (Ct.App. 1974) (taxation of income earned cut-of-state prior to establishing domicile in taxing state, but realized thereafter, does not violate Fourteenth Amendment); Olvey v. Collector of Revenue, *76 233 La. 985, 99 So.2d 317 (Sup.Ct.1957) (state of domicile may impose tax upon entire gain realized from sale of corporate stock, though stock had appreciated in value prior to taxpayer’s residence in state).
This result was implicitly sanctioned by the decision of our Supreme Court in Klebanow v. Glaser, 80 N.J. 367, 403 A.2d 897 (1979), where the court upheld the retroactive operation of the Unearned Income Act to that part of 1975 that preceded passage of the act. The taxpayer in that case moved to New Jersey in November 1974 and sold securities in January 1975 for $12,000,-000, resulting in long-term capital gain of $11,879,000. It is clear from the opinion that most, if not all, of the appreciation in value of the securities occurred prior to the taxpayer’s residency in New Jersey. In affirming the application of the statute to the appellant the court did not limit it to the gain that accrued subsequent to his taking up residence in this state.
Plaintiffs’ contention that the Due Process Clause forbids the taxation of pre-enactment appreciation must fall in light of the Supreme Court’s decision in MacLaughlin v. Allied Ins. Co., supra. Responding to a similar claim, the court said:
The tax being upon realized gain, it may constitutionally be imposed upon the entire amount of the gain realized within the taxable period, even though some of it represents enhanced value in an earlier period before the adoption of the taxing act. [286 U.S. at 250, 52 S.Ct. at 540]
State income tax statutes have consistently been upheld against such due process challenges. See, e. g., Tiedmann v. Johnson, 316 A.2d 359 (Me.Sup.Ct.1974); Shangri-La, Inc. v. State, 113 N.H. 440, 309 A.2d 285 (Sup.Ct.1973). In Chope v. Collins, 48 Ohio St.2d 297, 358 N.E.2d 573 (1976), the Ohio Supreme Court explained the rule as follows:
The event triggering operation of the taxing power is realization of gain, even if some of the profit realized in one period stems from an increase in value during an earlier period. The legislative body, enjoying the constitutional power to tax the gain, and having laid down a tax policy, may choose the incidence and measurement of the tax the moment that the gain and the amount are realized. MacLaughlin v. Alliance Ins. Co.... [Id. at 302, 358 N.E.2d at 577]
*77 I find that plaintiffs’ final contention that application of the Unearned Income Act is arbitrary, capricious and a denial of due process, is repetitious and without merit. New York ex rel. Cohn v. Graves, supra.
Accordingly, the determination of the Director, Division of Taxation, is affirmed.

William Hough purchased the Virginia realty in 1958 for $10,694. Since that time he has claimed and been allowed depreciation deductions on his federal income tax returns, thereby lowering his basis in the property. This lowered basis was utilized in computing the gain reported on plaintiffs’ 1975 federal return. Plaintiffs asserted in their petition of appeal to this court that if these gains are found to be taxable by the State of New Jersey, then the original cost basis should be used to calculate gain instead of the lower federal basis. This issue was neither raised at the pretrial conference nor preserved in the pretrial order and is deemed waived. See R. 4:25- 1(b).

The Act was enacted August 4, 1975 and applied to gains received on or after January 1, 1975. The act was repealed July 8, 1976, effective July 1, 1976. N.J.S.A. 54A:9-24.

The two parcels of land were sold in April, 1975, prior to the enactment of the Unearned Income Act on August 4, 1975. Plaintiffs do not raise any issue of retroactivity. The retroactive application of the Act to include gains realized between its January 1, 1975 effective date and August 4, 1975 was upheld in Klebanow v. Glaser, 80 N.J. 367, 403 A.2d 897 (1979).

The stipulation of facts on which the case was tried did not indicate that New Jersey taxed the same income. Similarly, plaintiffs herein do not allege that Virginia or New York State have imposed a tax upon the gains at issue. Thus, the issue of double taxation is not presented.